IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY TURLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-738-JPG-DGW |
| ) | |
| BRAD BRAMLET and TONYA KNUST, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants, Brad Bramlet and Tonya Knust, on February 3, 2014 (Doc. 24) be **GRANTED**, that the Motion to Strike Affirmative Defenses filed by Plaintiff, Gregory Turley, on February 20, 2014 (Doc. 34) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

FINDINGS OF FACT

Plaintiff, Gregory J. Turley, filed an amended complaint on August 19, 2013 (Doc. 8) in which he alleged that five employees at the Menard Correctional Center ("Menard CC") retaliated

against him for filing grievances and caused him to miss significant Court imposed deadlines.[1]  The Amended Complaint was screened pursuant to 28 U.S.C. § 1915A and Plaintiff was permitted to proceed on:

> Count 1: First Amendment access to courts claim against Defendants Bramlet and Knust for failing to provide electronically filed court documents and causing missed deadlines in on-going civil lawsuits.
>
> Count 2:  First Amendment Retaliation claim against Defendants Bramlet and Knust for interfering with his access to the courts in retaliation for the filing of grievances against them.
>
> Count 3:  Conspiracy claim against Bramlet and Knust for conspiring to retaliate against him and deny him access to the courts.

(Doc. 10, pp. 4-5).

Plaintiff alleges (at least in this lawsuit) that his problems with Knust and Bramlet began in early 2013.  With respect to Count 1, Plaintiff first alleges that they withheld documents, electronically filed in unidentified civil cases that Plaintiff is pursuing, from January 28, 2013 to February 21, 2013 (Doc. 8, p. 8).  Plaintiff also alleges that on July 3, 2013, a Report and Recommendation was issued in another case filed in this district, 3:11-cv-1052-MJR-SCW, *Turley v. Rednour, et al.*, and unreasonably withheld (Id. 5).  That document was not given to Plaintiff when he was allowed to visit the law library at Menard CC on July 8, 2013 (*Id.*).  At that time, Defendant Bramlet was present at the law library and apparently responsible for delivering court documents to inmates (*Id.*).  The Report and Recommendation was not actually delivered to Plaintiff until July 11, 2013, compelling him to seek an extension of time to file an objection (*Id.* 6).[2]  It is unclear from the statement of this claim how Defendant Knust was involved in the failure to provide this particular document in a timely manner.

With respect to Plaintiff's retaliation claim (Count 2) and conspiracy claim (Count 3),

---

[1] The original complaint was filed on July 24, 2013.

[2] From Court documents it appears that Plaintiff was granted an extension of time, until August 26, 2013, to file an objection.  The record, however, does not reveal that he filed a timely objection.

Plaintiff alleges that Defendants withheld court filings, from January 28, 2013 to February 21, 2013, after he submitted a January 17, 2013 "particularly inflammatory grievance" and a February 18, 2013 "emergency grievance" (*Id.* 9-10).  Plaintiff further alleges that Defendants discarded another Report and Recommendation, issued in the above case on May 20, 2013, in retaliation for grievances that he wrote against them on May 3, 7, and 13, 2013 (*Id.* 7).  Plaintiff did not become aware of the Report and Recommendation until he received the District Court's Order adopting the same on July 16, 2013 (*Id.* 6-7).  Plaintiff also alleges that his law library time was also restricted in retaliation for filing grievances against Bramlet and Knust (who also conspired to restrict his library access) (*Id.* 11-12). In particular, Plaintiff alleges that after July 9, 2013, his library time was cut in half and he was compelled to sit in a particularly undesirable spot in the law library (*Id.* 12, 16).

Defendants filed a Motion to Summary Judgment on the Issue of Exhaustion on February 3, 2014 (Doc. 24).  Plaintiff filed a response on March 6, 2014 (Doc. 37) in addition to a Motion to Subpoena Witnesses (Doc. 31), a Motion to Strike Defendants' Affirmative Defense (Doc. 34), and a Motion to Compel and Produce (Doc. 36).  The Motion to Subpoena Witnesses was denied without prejudice and Plaintiff was informed that the necessity of witnesses on the issue of exhaustion will be determined at the hearing.  As to the Motion to Strike, Plaintiff argues that Defendants should be "estopped" form asserting the affirmative defense of failure to exhaust because they are actively retaliating against him for filing grievances.  Finally, Plaintiff states that he did not receive Exhibit A to Defendants' Motion for Summary Judgment (Terri Anderson's Affidavit).[3]

---

[3] Plaintiff makes a variety of legal arguments as to why the issue of exhaustion should be decided by jury and cites to *Jones v. Bock*, 549 U.S. 199 (2007).  These arguments are without merit.  *Jones* does not hold that a jury must consider the issue of exhaustion.  The Seventh Circuit Court of Appeals, however, has held that the question of whether an inmate has exhausted his administrative remedies should be decided by a judge.  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).  Plaintiff seeks to subpoena various witness including Terri Anderson (Chairperson of the Administrative Review Board), Lori Oakley and Linda Carter (grievance officers), and Ronald Barrows, Christopher Pyler, Carl Moss, and Christopher Hightower (inmates).   It is unclear what testimony, relevant to exhaustion, these witnesses would provide that is not already contained in the record.  At the April 1, 2014 hearing, Plaintiff indicated that he did receive Exhibit A to Defendants' Motion for Summary

A hearing pursuant to *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), was held on April 1, 2014 in which Plaintiff appeared by video-conference and Defendants appeared by counsel.

As indicated above, Plaintiff complains of retaliation and denial of access to the Courts from January, 2013 to July, 2013. Defendants argue that there are four unexhausted grievances submitted by Plaintiff regarding the conduct of Bramlet and Knust that are currently pending before the Administrative Review Board. According to Terri Anderson, a Chairperson for the Office of Inmate Issues (i.e. the Administrative Review Board, "ARB"), these four grievances were filed on January 2, 2013 (#45-6-13),[4] January 7, 2013 (#90-1-13), July 25, 2013 (#7-9-13), and September 30, 2013 (#52-10-13). (Def. Ex. A, Terri Anderson Aff. ¶¶ 14, 16, 17, 19; Doc. 25-1).

The January 2, 2013 grievance concerned limited law library access in December, 2012 (Doc. 25-3, pp. 38-39). A counselor responded on January 11, 2013; the grievance officer responded on March 21, 2013; the warden concurred on March 27, 2013; and, Plaintiff appealed to the ARB on April 4, 2013 (*Id*. 37). This grievance does not appear related to the claims in this lawsuit.

The January 7, 2013 grievance (which is 4 pages long) concerned retaliation in the form of restrictions on law library use (Doc. 25-3, pp. 32-35). Plaintiff specifically names Defendant Bramlet and states that he is being denied full access to the library in retaliation and in order to limit the inmates' ability to prosecute their civil actions. Plaintiff does not indicate what action on his part (i.e. the filing of a grievance, otherwise complaining, filing a lawsuit) led to the retaliation. This grievance was responded to by the grievance officer and the warden concurred on March 27, 2013 (*Id.* 31). Plaintiff appealed on April 4, 2013 (*Id.*). It does not appear that this grievance is related to the allegations in the complaint (which suggests an onset date of January 17, 2013).

The July 25, 2013 grievance (which is 8 pages long) concerned retaliation in July, 2013 by

---

Judgment.

[4] These numbers represent the Illinois Department of Corrections internal numbering system for grievances submitted by inmates.

Defendants Bramlet and Knust after the filing of three grievances in May, 2013 (Doc. 25-3, p. 18-24). A counselor responded on August 26, 2013, the grievance officer responded on October 17, 2013; the warden concurred on October 22, 2013; and, Plaintiff appealed to the ARB on October 31, 2013 (*Id.* 16-17). The ARB has not issued a ruling on this grievance as of the date of the Report and Recommendation. This grievance was submitted a day **after** plaintiff filed his complaint in this case.

In the September 30, 2013 grievance (Doc. 25-2, pp. 33-34), Plaintiff complained that free copier services are being given to inmates servings as law clerks by Defendant Bramlet, thereby violating prison policies. Plaintiff mentions that he does not want either Bramlet or Knust to know about this grievance because he has been subjected to "ongoing retaliation." The grievance itself, however, does not complain about any retaliation. A grievance officer responded to this grievance on November 13, 2013; the warden concurred on November 19, 2013, and Plaintiff appealed to the ARB on November 21, 2013 (*Id.* 31-32). This grievance was also submitted **after** Plaintiff filed his complaint in this case.

At the *Pavey* hearing, Plaintiff stated that he submitted a grievance regarding the events that occurred in July, 2013 (i.e the failure to provide the May 20, 2013 and July 3, 2013 Reports and Recommendations in a timely manner, the retaliation subsequent to the filing of 3 grievances in May, 2013, the changes in his access to the law library after July, 9 2013), in early July and/or on July 25, 2013. Plaintiff also asserts that he filed the July 25, 2013 grievance with respect to his conspiracy claims. As to his claims that he was denied court filings for a 24 day period in January/February, 2013, Plaintiff states that he filed an emergency grievance on February 28, 2013, that it was returned to him as not an emergency, and that he submitted it to the grievance officer on March 15, 2013. He further indicated that he did not appeal this grievance to the ARB because he did not receive a response from the grievance officer. This February 28, 2013 grievance is attached to Plaintiff's response to the Motion for Summary Judgment (Do. 37). In this grievance, Plaintiff complains that he was denied access to the law library in January and February 2013, notwithstanding having court

imposed deadlines, that Defendants Bramlet and Knust are intentionally withholding court documents since January 28, 2013 and that he is being retaliated against for filing other grievances (Doc. 37-1, pp. 12-13). Emergency review was denied on February 20, 2013 and a counselor responded on March 4, 2013 (*Id.* 12). There is no indication in the record that Plaintiff submitted it to the grievance office or that he appealed to the ARB. However, Plaintiff has attached a letter, dated June 26, 2013 to a grievance officer, inquiring as to the status of his grievance (*Id.*16).

In his Motions/responses and at the hearing, Plaintiff further indicated that two grievances that he submitted on March 25, 2012[5] and October 9, 2012 also concern the matters contained in his Complaint. The October 9, 2012 grievance (#99-10-12) generally complains of Plaintiff's access to the law library, the adequacy of legal services, and access to the Courts (Doc. 37-1, pp. 1-5). Plaintiff mentions Defendant Bramlet as conspiring with others to deny him an adequate law library. The grievance officer responded on February 5, 2013 and the ARB responded on January 9, 2014 (the ARB received the grievance on March 7, 2013) (*Id.* 4-5). Plaintiff also includes a number of other documents that appear unrelated to the issues in this case. Attached to the Amended Complaint are three grievances dated May 3, 2013, May 7, 2013, and May 13, 2013 (Doc. 8-1, pp. 3-10). While a counselor responded to each of these grievances on May 25, 2013, there is no indication in the record that they were submitted to a grievance officer or appealed to the ARB.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir.

---

[5] This grievance concerns retaliation by anther library paralegal, Jennifer Clendenin (Doc. 25-2, p. 10).

2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court

agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). The ARB generally must provide a response within 6 months of receipt of a grievance appeal. ILL. ADMIN. CODE TIT. 20, § 504.850(f). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a

remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

There are only two relevant grievances submitted by Plaintiff: the grievances dated February 28, 2013 and July 25, 2013. As noted in the Amended Complaint and the August 26, 2013 Order (Doc. 10), the events giving rise to Plaintiff's claims all occurred in 2013. Plaintiff also has identified a set period of dates for when he believes he was denied access to the courts and when he believes that he was retaliated against for filing grievances: he states that court documents were kept from him from January 28, 2013 to February 21, 2013 and from May 20, 2013 to July 9, 2013 and that his law library access was curtailed or interfered with beginning on July 9, 2013; he alleges that he was retaliated against after filing grievances on January 17, 2013, February 18, 2013, May 3, 2013, May 7, 2013, and May 14, 2013; and, he alleges that the conspiracy to deprive him of access to the courts and to retaliate against him occurred around July, 2013. Therefore, the March 25, 2012, the October 9, 2012, and the January 2, 2013 grievances are irrelevant because they concern events (most of which are unrelated to this suit) that occurred prior to time identified in the Amended Complaint.

The January 7, 2013 grievance names Defendant Bramlet and complains that on January 7, 2013 Plaintiff was denied meaningful law library access and that, throughout 2012, Warden Atchison retaliated against him. Warden Atchison is not a party to this lawsuit and Plaintiff's access to courts claim involves limited law library access starting in July, 2013 (and not January 7, 2013). This January 7, 2013 grievance, then, also is insufficient to exhaust administrative remedies with respect

to Plaintiff's claims.  The September 30, 2013 grievance also is insufficient to exhaust administrative remedies with respect to Plaintiff's claims because it was submitted after Plaintiff filed his complaint and was not fully exhausted prior to the filing of the Complaint.

The July 25, 2013 grievance does outline events the Plaintiff repeats in his Amended Complaint: namely that Defendants Bramlet and Knust are retaliating against him for filing grievances in May 2013 and that they are withholding important court documents.  This grievance, however, was filed after Plaintiff filed his lawsuit and is still pending before the ARB.  This grievance therefore was not fully exhausted prior to the filing of the Complaint.

The only remaining grievance is dated February 18, 2013.  In the grievance, Plaintiff complains that he did not receive law library access from January 20, 2013 to February 17, 2013, that Defendants Bramlet and Knust are withholding court documents since January 28, 2013, and that Defendants' actions are in retaliation for the filing of grievances against them.

As indicated above, Plaintiff stated that after he received a response from his counselor on March 5, 2013, he copied this grievance and submitted it to the grievance officer on March 15, 2013.  There is a notation of this grievance indicating as much: "(sent to grievance officer on 3/15/13)" (Doc. 8-1, p. 27; Doc. 37-1, p. 12).  However, Defendants point out that there is no response from the grievance officer and no showing that Plaintiff submitted the grievance to the ARB.  At the hearing, Plaintiff countered that he submitted it to the grievance officer on March 15, 2013 by placing it in the bars of his cell and that he never did receive a response from the grievance officer.  In addition, Plaintiff notes that June 26, 2013, he wrote a letter to the grievance officer inquiring as to the status of the grievance (Doc. 37-2, p. 16).  That letter, however, states that he sent the grievance to the grievance officer on March 21, 2013.  This Court finds that Plaintiff is not credible in his assertion that he submitted the grievance to the grievance officer.  This is the only grievance in the record that, according to Plaintiff, was submitted to the grievance officer but that did not receive a response.  All of Plaintiff's other grievances were reviewed by a grievance officer and Plaintiff received responses.

This Court therefore finds that this grievance was not fully exhausted notwithstanding the availability of a grievance process. *See Kaba*, 458 F.3d at 684 ("When the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

Plaintiff argues that Defendants should be estopped from alleging an exhaustion defense because they are retaliating against him for filing grievances. Essentially, Plaintiff argues that the pattern of retaliation has made the grievance process unavailable. The record shows that notwithstanding any alleged retaliation on the part of Bramlet and Knust, Plaintiff has been able to avail himself of the grievance process and has filed numerous grievances, some of which are currently pending before the ARB. Plaintiff himself has provided a list of a number of grievances filed after the alleged retaliation (Doc. 37, p. 6). Plaintiff further indicates that: "The Plaintiff – an expert on seeing pattern/redundant retaliation by Menard Correctional Center personnel – filed this lawsuit to draw outside attention to his internal complaints in hopes of neutralizing continuing retaliation by Defendants Bramlet and Knust" (Doc. 34). And, this Court had the opportunity to observe Plaintiff at the April 1, 2014: Plaintiff's demeanor and arguments reveal that he is not intimidated or otherwise thwarted from filing and pursuing grievances (and lawsuits) against Defendants. *See Schultz v. Pugh*, 728 F.3d 619 (7th Cir. 2013) (noting that "[a] remedy is not available, therefore, to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline.") The grievance process has not been made unavailable to Plaintiff because of an alleged pattern of retaliation. Plaintiff's actions and demeanor reveal that he is neither intimidated nor prevented form seeking redress in the form of grievances or lawsuits.

With respect to the particular applicability of equitable estoppel in the prisoner litigation context, the Seventh Circuit has avoided a decision on whether defendants can be estopped from arguing the defense of exhaustion because of their misconduct in the grievance process. *Kaba*, 458

F.3d at 686; *Schultz*, 728 F.3d at 622. If this doctrine did apply, however, Plaintiff is required to demonstrate that: "(1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment." *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002). Plaintiff has not pointed to any misrepresentations, nor is there any showing that he relied on such misrepresentations, nor is there any showing that he suffered a detriment. Equitable estoppel would not apply to this matter.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants, Brad Bramlet and Tonya Knust, on February 3, 2014 (Doc. 24) be **GRANTED**, that the Motion to Strike Affirmative Defenses filed by Plaintiff, Gregory Turley, on February 20, 2014 (Doc. 34) be **DENIED**, that this matter be **DISMISSED WITHOUT PREJUDICE** for the failure to exhaust, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: April 10, 2014**

          **DONALD G. WILKERSON**
          **United States Magistrate Judge**